**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BRIAN KERRY O'KEEFE, | Case No.: 3:14-cv-00477-RCJ-CBC |
| Petitioner | **Order** |
| v. | |
| BRIAN E. WILLIAMS, et al., | |
| Respondents. | |

## I. INTRODUCTION

This case is a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254, by Brian Kerry O'Keefe, a Nevada prisoner. This case is before the Court for adjudication of the merits of O'Keefe's remaining claims. The Court will deny O'Keefe's habeas petition, will deny him a certificate of appealability, and will direct the Clerk of the Court to enter judgment accordingly.

## II. BACKGROUND

O'Keefe was tried in state district court three times on charges of murder with the use of a deadly weapon. The first jury convicted him of second-degree murder with the use of a deadly weapon, and the judgment of conviction was entered on May 8, 2009. ECF No. 59. On April 7,

2010, the Nevada Supreme Court reversed O'Keefe's conviction and remanded the matter for a new trial reasoning that:

> the district court abused its discretion when it instructed the jury that second-degree murder includes involuntary killings that occur in the commission of an unlawful act because the State's charging document did not allege that O'Keefe killed the victim while he was committing an unlawful act and the evidence at trial did not support this theory of second-degree murder.

ECF No. 59-20.

On August 19, 2010, a second-amended information was filed, charging O'Keefe with murder in the second degree with the use of a deadly weapon. ECF No. 61. The jury deadlocked, and the court declared a mistrial. ECF No. 61-18 at 8. Following a third trial, the jury convicted O'Keefe on June 15, 2012. ECF No. 63-29. The state district court sentenced him to a term of 120 to 300 months, with a consecutive term of 8 to 20 years for the deadly weapon enhancement. ECF No. 76-7. The judgment of conviction was entered on September 5, 2012. *Id.*

The Nevada Supreme Court affirmed O'Keefe's conviction on April 10, 2013. ECF No. 76-23. The Nevada Supreme Court denied O'Keefe's petition for rehearing, and remittitur issued on July 23, 2013. ECF No. 64, 76-25.

O'Keefe filed a motion to modify and/or correct his illegal sentence on January 27, 2014. ECF No. 64-15. The state district court denied the motion on March 25, 2014. ECF No. 65-3. The Nevada Supreme Court affirmed the denial of the motion on July 23, 2014. ECF No. 65-19. O'Keefe filed a state post-conviction habeas corpus petition and a counseled, supplemental petition. ECF No. 66-8, 67-7. The state district court denied O'Keefe's petition on October 2, 2015, without an evidentiary hearing. ECF No. 68-18. The Nevada Supreme Court affirmed the denial of the petition as procedurally barred on June 22, 2016. ECF No. 70-7. Remittitur issued on December 16, 2016. ECF No. 70-27.

O'Keefe dispatched his federal habeas petition for filing on or about September 15, 2014. ECF No. 1-1. O'Keefe filed an amended petition on December 1, 2014, and a notice of supplemental authorities on February 2, 2015. ECF No. 7, 10. This Court dismissed O'Keefe's amended petition without prejudice for failure to exhaust state remedies. ECF No. 14. Judgment was filed on February 11, 2015. ECF No. 15. O'Keefe filed a motion for a certificate of appealability, a notice of appeal, and a motion for this Court to reconsider its order. ECF Nos. 17, 18, 19. This Court denied the motion to reconsider and the motion for a certificate of appealability. ECF No. 23. O'Keefe filed an amended notice of appeal. ECF No. 24. Counsel was appointed for O'Keefe. ECF No. 28. The Ninth Circuit vacated this Court's order and remanded the case for further proceedings after determining that at least one of O'Keefe's claims was exhausted. ECF No. 30.

O'Keefe moved to withdraw counsel. ECF No. 39. O'Keefe's appointed counsel filed a response indicating that he did not oppose O'Keefe's request to represent himself. ECF No. 40. This Court granted O'Keefe's motion to withdraw counsel. ECF No. 49.

O'Keefe filed a pro se second-amended petition. ECF No. 50. O'Keefe's second-amended petition asserts that his federal constitutional rights were violated due to the following alleged violations:

1. The state district court failed to stay his trial despite having notice of a writ order.

2. The state district court conducted a trial without subject matter jurisdiction.

3. His right to be free from double jeopardy was violated because the state district court ruled contrary to *Schad v. Arizona* and because "when the Nevada Supreme Court stated that the 'evidence presented at trial did not support this theory of second degree murder,' jeopardy terminated."

4. The state district court denied his proposed implied malice jury instruction, and as such, the jury was not properly instructed on the elements of second-degree murder.

5.      His rights to "law of the case[ and] access to the court actual innocence" were violated.

The Respondents filed a motion to dismiss the second-amended petition. ECF No. 56. O'Keefe filed a motion for summary judgment. ECF No. 94. O'Keefe also filed a petition for a writ of mandamus in the Ninth Circuit asking that this Court be compelled to rule on his motion for summary judgment, the Respondents' motion to dismiss, and the habeas petition. ECF No. 95. This Court granted the Respondents' motion to dismiss in part. ECF No. 106. Specifically, this Court held that "[t]he portion of ground 1 that alleges an equal protection claim and the portion of ground 3 that claims a violation of petitioner's rights pursuant to *Shad v. Arizona* are unexhausted. Grounds 2 and 5 are dismissed." *Id.* at 8. This Court also denied O'Keefe's motion for summary judgment. *Id.* at 10. O'Keefe filed a declaration of election to abandon "only [the] equal protection claim in Ground 1" and "only [the] *Shad* [portion] from (exh. 228, pp 7-11) Ground 3." ECF No. 107 at 2. The Ninth Circuit denied O'Keefe's request for a writ of mandamus. ECF No. 112.

The Respondents filed an answer to the second-amended habeas petition on June 1, 2018. ECF No. 115. And O'Keefe filed a reply on June 28, 2018. ECF No. 116. O'Keefe filed an errata to his reply, a notice of supplemental authorities, and a second notice of supplemental authorities on July 6, 2018, July 16, 2018, and August 14, 2018, respectively. ECF No. 118, 119, 121.

## III.   STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)

(describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## IV.    DISCUSSION

### A.    Ground 1[1]

O'Keefe argues that his Fifth and Fourteenth Amendment rights to due process and a fair trial were violated because the "trial court failed to stay [his] trial despite notice of [the] writ order." ECF No. 50 at 17. O'Keefe appears to be claiming that the state district court erred by failing to postpone his state trial when he had a pending issue in federal court regarding a double jeopardy violation. In O'Keefe's direct appeal following his third trial, the Nevada Supreme Court held that:

> O'Keefe argues that the district court abused its discretion by denying his request to stay or continue trial for approximately nine months because he had pending proceedings in federal court and was unprepared for trial. The district court rejected O'Keefe's assertion that his federal proceedings in any way limited his ability to prepare for trial and noted that O'Keefe asked to represent himself and was given ample time to do so effectively. We conclude that the district court did not abuse its discretion by denying O'Keefe's request for an extended continuance where the delay was his fault. *See Rose v. State*, 123 Nev. 194, 206, 163 P.3d 408, 416 (2007).

ECF No. 76-23 at 3-4.

On December 16, 2011, approximately six months prior to his third trial, a hearing was held before the state district court pursuant to *Faretta v. California*, 422 U.S. 806 (1975). ECF No. 63 at 2-3. At the beginning of the hearing, O'Keefe stated that he wished to represent himself. *Id.* at 3. The state district court canvassed O'Keefe's on his request, and then "f[ou]nd

---

[1] This Court previously found that the equal protection portion of this claim was unexhausted. ECF No. 106 at 5. Thereafter, O'Keefe filed a declaration of election to abandon the "equal protection claim in Ground 1." ECF No. 107 at 2.

that [O'Keefe was] competent to waive [his] constitutional right to be represented by an attorney" and that he waived his right freely, voluntarily, and knowingly.[2] *Id.* at 15. Stand-by counsel was appointed for O'Keefe. *Id.* at 3-16.

On January 6, 2012, in *O'Keefe v. Gillespie*, 2:11-cv-02109-GMN-VCF, this Court issued an order explaining that O'Keefe sought "to present constitutional claims regarding his pending Nevada state prosecution, including a double jeopardy claim" and sought "federal intervention to bar the third trial." ECF No. 7-1 at 121-22. This Court ordered O'Keefe to show cause why "the petition should not be dismissed without prejudice for lack of exhaustion" and "why Ground 3 also is not subject to dismissal without prejudice based upon the *Younger* abstention doctrine." *Id.* at 123. Thereafter, on February 2, 2012, this Court issued another order in *O'Keefe v. Gillespie*, 2:11-cv-02109-GMN-VCF, explaining that O'Keefe filed an amended petition deleting Grounds 2 and 3. ECF No. 7-1 at 118. This Court then sua sponte dismissed O'Keefe's amended petition without prejudice for lack of exhaustion and denied O'Keefe a certificate of appealability. *Id.* at 118-120. O'Keefe appealed, and on April 13, 2012, in case number 12-15271, the Ninth Circuit granted O'Keefe a certificate of appealability with regard to two issues: "(1) whether the district court properly determined that [O'Keefe]'s double jeopardy claim was unexhausted, and (2) whether [O'Keefe], as a state pre-trial detainee, was required to exhaust his claim in state court before filing his 28 U.S.C. § 2241 petition." ECF No. 9-2 at 1. On May 9, 2012, the Ninth Circuit granted O'Keefe's motion to proceed in forma pauperis, granted his motion for appointment of counsel, and, importantly, denied "[t]he motion to stay state court proceedings." ECF No. 9-1 at 1-2.

---

[2] The Nevada Supreme Court later held that "the district court did not abuse its discretion by granting O'Keefe's request for self-representation." *See* ECF No. 76-23 at 3.

On June 1, 2012, ten days prior to the beginning of his third trial, O'Keefe's stand-by counsel filed a motion in state district court to continue O'Keefe's trial. ECF No. 63-19. In the motion, O'Keefe's stand-by counsel explained that O'Keefe "currently ha[d] an open case in the United States Court of Appeals for the Ninth Circuit, Case No.: 12-15271" and that "O'Keefe's federal public defender [was] requesting a stay of this State level trial in the federal courts." *Id.* at 4-5. On June 5, 2012, the state district court had a calendar call. *See* ECF No. 63-20 at 2. The State indicated that it was ready for trial. *Id.* at 3. In response, O'Keefe stated:

> I have a comment I want to put out there, Your Honor. Of course, you know, I've always been forthright and honest with you, sir. I am claiming a valid violation of my Federal Constitutional Rights Fifth Amendment double jeopardy violation in the Federal Courts, Your Honor.

> You're aware that right now we are requesting an emergency stay. Basically I'll be concise more, Your Honor. If this was the first trial, I would understand that you would probably want to proceed, but being the third trial, Your Honor, I'm not going any where. I have no problem if you agree, if [the State] stipulates to postpone this and let the action be heard in the 9th Circuit.

> Your Honor, with all due respect I understand that you've warned me and told me to be prepared. I'm not going to lie. I'm not really totally prepared, but that's not your problem, Your Honor. If you deem that we are to proceed with trial Monday, then we have to proceed; that's the way it is and we'll let the 9th Circuit deal with it later.

> However, again, I must stress that the - - you know, again, Your Honor, I'm not going any where. This has had - -  I got a motion this morning from my Federal Public Defender and I'm amazed at all the thousands of hours that have been spent in this already. And again, Your Honor, like I said the 9th Circuit feels there is something really there; that there's a valid substantial claim has been made.

> Again, Your Honor, I know I'm sounding like a parrot. I'm not going any where. For judicial economy and administration just good judgment reasoning, I would think the right thing to do if the State's stipulates to this, sir, to just postpone this 'till March, status check and - - and let's see what happens. If the 9th Circuit deems that no - - there's no issue, then lets proceed, Your Honor, and let the chips, you know, lay where they fall.

> . . .

But, you know, I do feel that again the economy is in extreme dire emergency state right now and, you know, I'm not trying any tricks. I'm not trying any ploys. Again, the decision ultimately is yours. You did tell me be ready and, you know, that's not your fault, Your Honor. That's a different argument.

The argument is if I'm ready to go; no, I'm not really ready to go, Your Honor. I'm asking that you postpone this to possibly March. I think would be an adequate time. Again, I'm not going any where. I've said what I had to say, Your Honor. The decision ultimately is yours.

I do want to point out that Mr. Maningo is here as stand-by and my AFPD, Ryan Norwood, is here. If you have any questions that you would like to direct for him, I don't know. That's up to you. I've said what I had to say, Your Honor.

*Id.* at 3-5. The state district court then informed O'Keefe that he had "had six months or more than six months since you decided to represent yourself" and asked why O'Keefe was not prepared. *Id.* at 5. O'Keefe responded:

Well, I have been preparing somewhat, Your Honor, but again with all due respect, sir, I put it this way, Your Honor, I put my heart thousands of hours into my Federal habeas petition. To be concise on the matter, Judge Gloria Navarro agreed that there was an issue, but she felt that the procedural error had been done.

Now, the 9th Circuit had wrote against her and said no it didn't need to be done. Basically what I'm getting at, Your Honor, I put it this way, if the 9th Circuit agrees with me and feels that there really is an issue which I believe there is a valid Federal Constitutional violation going on here, I will be violated against by the laws and trees [sic] of the United States Constitution.

Apparently the 9th Circuit is what I'm getting at, sir, I feel if they agree with me, you know, I was going to fight more for the petition. I kind of put all my eggs in the basket, my hopes. And again, Your Honor, I'm not worried any more. If you say we're not going to stop, I'll be there Monday, you know. It'll be what it'll be. You know, I'm just being forthright and honest with you in telling you. Maybe it was a mistake. Maybe it wasn't.

Again, I'm not going any where. The decision ultimately is yours. You're in an impasse. I understand exactly. You know, you hear case after case. I would never want your job. It's a big decision for you. Again, the State may not want it. They may want to proceed. I mean, I don't know how the State actually feels about it. . . .

*Id.* at 5-6.

The State explained that it had placed this matter on the calendar call the previous week because it had two jury trials—O'Keefe's trial and another murder trial—that were scheduled the same day. *Id.* at 9. After O'Keefe failed to ask for a continuance at that time, the State explained that it continued its other trial because the state district court assured it that O'Keefe's trial "would be proceeding as scheduled." *Id.*

O'Keefe's federal counsel explained at the calendar call that the motion for stay had been denied by the Ninth Circuit but that a motion to reconsider had been filed. *Id.* at 11-12. O'Keefe's federal counsel also clarified that although O'Keefe may not have articulated his request very well, O'Keefe "would like a stay or a continuance to be granted in this Court." *Id.* at 14. The state district court denied "any oral request to continue the trial," explaining that "if the 9th Circuit issues a stay on Friday, then so be it and then the matter [is] stayed. If they don't issue a stay, then we'll proceed to trial on Monday morning." *Id.* The state district court also explained that "just because you filed motions with the 9th Circuit it doesn't tell you to stop preparing for trial." *Id.* at 15. On the morning of the first day of trial, the State represented that the Ninth Circuit "elected twice not to stay" O'Keefe's third trial. ECF No. 63-21 at 23.

Federal courts are precluded from issuing injunctions of pending state criminal prosecutions absent special or extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 40, 53-54 (1971); *see also Drury v. Cox*, 457 F.2d 764, 764-65 (9th Cir. 1972) ("[O]nly in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after the jury comes in, judgment has been appealed from and the case concluded in the state courts."); *Carden v. Montana*, 626 F.2d 82, 83-84 (9th Cir. 1980) (finding that the principle of comity requires that a federal court abstain from considering a pre-trial habeas challenge unless special circumstances warrant federal intervention). One extraordinary

circumstance that can justify pre-trial habeas relief is "[a] claim that a state prosecution will violate the Double Jeopardy Clause." *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992).

By granting him a certificate of appealability, O'Keefe argues that the Ninth Circuit exercised jurisdiction over his habeas petition and that this exercise of jurisdiction stayed his ongoing state proceedings. ECF No. 50 at 18. "[A] federal court's exercise of jurisdiction over a habeas petition that raises an affirmative defense to state prosecution before trial and conviction *can* have the same effect as a direct injunction of ongoing state proceedings." *Brown v. Ahern*, 676 F.3d 899, 900-901 (9th Cir. 2012) (emphasis added). However, an injunction is not required or automatic. In fact, 28 U.S.C. § 2251(a)(1) provides:

> A justice or judge of the United States before whom a habeas corpus proceeding is pending, *may*, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

(Emphasis added.); *see also McFarland v. Scott*, 512 U.S. 849, 858 (1994) ("Section 2251 does not mandate the entry of a stay, but dedicates the exercise of stay jurisdiction to the sound discretion of a federal court."). Further, regardless of whether an injunction was automatic when the Ninth Circuit granted O'Keefe a certificate of appealability on April 13, 2012, *see* ECF No. 9-2, it later denied O'Keefe's "motion to stay [the] state court proceedings" on May 9, 2012, ECF No. 9-1 at 2, thereby nullifying any previous stay. *See* 28 U.S.C. § 2251(b) ("If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.").

Although the Ninth Circuit denied O'Keefe's motion for a stay, it must also be assessed whether the state district court should have nonetheless continued O'Keefe's trial in order to allow the Ninth Circuit to rule on O'Keefe's appeal. "The matter of continuance is traditionally

within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Further, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.* Because "[t]rial judges necessarily require a great deal of latitude in scheduling trials" due to issues of "assembling the witnesses, lawyers, and jurors at the same place at the same time," continuances should not be granted "except for compelling reasons . . . ; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (quoting *Ungar*, 376 U.S. at 589) (acknowledging that appropriate factors to consider include administration of justice, difficulty in assembling witnesses, bad faith delaying tactics, victims' concerns); *see also Houston v. Schomig*, 533 F.3d 1076, 1079 (9th Cir. 2008) ("The record supports the state court's conclusion that the trial judge acted within his broad discretion in denying Houston's motion for a continuance to retain counsel. Specifically, he confirmed that counsel was able to proceed to trial, evaluated Houston's diligence in timely retaining private counsel, and weighed the potential impact a continuance may have on the victims and witnesses.")

O'Keefe's stand-by counsel requested a continuance of the trial date due to O'Keefe's federal case. *See* ECF No. 63-19. And O'Keefe requested a continuance due to his federal case and because he was "not really totally prepared." *See* ECF No. 63-20 at 4. O'Keefe explained that he "put [his] heart [and] thousands of hours into [his] Federal habeas petition" and that he "kind of put all [his] eggs in [one] basket." *Id.* at 5-6. Because the stay was denied by the Ninth

Circuit and because it is clear that O'Keefe focused on his federal appeal at the expense of his state trial, there does not appear to be a "compelling reason" why a continuance should have been granted. *Morris*, 461 U.S. at 11. Therefore, because O'Keefe's right to a fair trial and right to due process were not violated, the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny O'Keefe habeas corpus relief with respect to Ground 1.

## B.     Ground 3[3]

O'Keefe argues that his Fifth and Fourteenth Amendment rights to be free from double jeopardy were violated. ECF No. 50 at 43. O'Keefe asserts that the "first reversal [was] tantamount to an acquittal for second-degree murder because express or implied malice are constitutionally acceptable alternatives to satisfy the mens rea requirement for second-degree murder." *Id.* at 45. The Respondents argue that the Nevada Supreme Court held that the evidence presented at O'Keefe's first trial did not support second-degree felony murder; it did not hold that the evidence presented did not support *any* theory of second-degree murder, such as killing by express or implied malice. ECF No. 115 at 19-20.

In O'Keefe's direct appeal following his first trial, the Nevada Supreme Court held:

> O'Keefe contends that the district court erred by giving the State's proposed instruction on second-degree murder because it set forth an alternative theory of second-degree murder, the charging document did not allege this alternate theory, and no evidence supported this theory. We agree. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error. An abuse of discretion

---

[3] This Court previously found that the portion of this claim that was based on *Schad v. Arizona* was unexhausted. ECF No. 106 at 5. Thereafter, O'Keefe filed a declaration of election to abandon "only [the] *Shad* [portion] from (exh. 228, pp 7-11) Ground 3." ECF No. 107 at 2.

occurs if the district court's decision is arbitrary or capricious or if it exceeds the bounds of law or reason." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005) (internal quotation marks and footnote omitted). Here, the district court abused its discretion when it instructed the jury that second-degree murder includes involuntary killings that occur in the commission of an unlawful act because the State's charging document did not allege that O'Keefe killed the victim while he was committing an unlawful act and the evidence presented at trial did not support this theory of second-degree murder. *Cf.*, *Jennings v. State*, 116 Nev. 488, 490, 998 P.2d 557, 559 (2000) (adding an additional theory of murder at the close of the case violates the Sixth Amendment and NRS 173.075(1)). The district court's error in giving this instruction was not harmless because it is not clear beyond a reasonable doubt that a rational juror would have found O'Keefe guilty of second-degree murder absent the error. *See Neder v. United States*, 527 U.S. 1, 18-19 (1999); *Wegner v. State*, 116 Nev. 1149, 1155-56, 14 P.3d 25, 30 (2000), overruled on other grounds by *Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006). Because we conclude that the judgment of conviction must be reversed and the case remanded for a new trial, we need not reach O'Keefe's remaining contentions.

ECF No. 59-20 at 2-3.

In O'Keefe's direct appeal following his third trial, the Nevada Supreme Court held:

O'Keefe argues that his conviction violates double jeopardy because this court reversed his prior conviction for the same offense after concluding that insufficient evidence was presented at trial. O'Keefe is mistaken. This court reversed his prior conviction because the jury was erroneously instructed regarding a theory that the killing occurred during the commission of an unlawful act, which was not alleged in the charging document and was not supported by the evidence. *O'Keefe v. State*, Docket No. 53859 (Order of Reversal and Remand, April 7, 2010). Double jeopardy does not preclude O'Keefe's instant conviction under an alternate theory of second-degree murder which was presented at his first trial and alleged in the charging document. *See Parker v. Norris*, 64 F.3d 1178, 1180-82 (8th Cir. 1995) (finding no double jeopardy violation where defendant's conviction for felony murder was reversed due to error and defendant was convicted at a second trial under an alternative theory of murder); *see also Stephens v. State*, 127 Nev. ___, ___, 262 P.3d 727, 734 (2011) (the remedy for errors unrelated to sufficiency of the evidence is reversal and remand for a new trial, not an acquittal).

ECF No. 76-23 at 2-3.

The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. U.S. Const. amend. V. The Fifth Amendment guarantee against double jeopardy is enforceable against the States through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S.

784, 794 (1969). The Double Jeopardy Clause provides three related protections: (1) it prohibits a second prosecution for the same offense after acquittal; (2) it prohibits a second prosecution for the same offense after conviction; and (3) it prohibits multiple punishments for the same offense. *United States v. Wilson*, 420 U.S. 332, 343 (1975). "[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988); *see also United States v. Scott*, 437 U.S. 82, 90-91 (1978) ("The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, . . . poses no bar to further prosecution on the same charge."). A reversal of a conviction due to a trial error, as compared to a reversal due to insufficient evidence, "is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e.g.*, incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct." *Burks v. United States*, 437 U.S. 1, 15 (1978).

Indeed, the Nevada Supreme Court reversed O'Keefe's conviction following his first trial due to incorrect instructions: "the district court abused its discretion when it instructed the jury that second-degree murder includes involuntary killings that occur in the commission of an unlawful act." ECF No. 59-20 at 2; *cf. DuBois v. Lockhart*, 859 F.2d 1314, 1318 (8th Cir. 1988) ("In determining whether a reversal was based on evidentiary sufficiency [for double jeopardy purposes], we must rely on the reasons of the reversing court."). Because O'Keefe's conviction was reversed due to incorrect jury instructions, which is a trial error, *see Burks*, 437 U.S. at 15, the State was not prohibited from retrying him. *Lockhart*, 488 U.S. at 38.

O'Keefe argues that the Nevada Supreme Court's ruling reversing his conviction was not based merely on a trial error, but rather, it was based on insufficient evidence. ECF No. 50 at 51. In holding that "the district court abused its discretion when it instructed the jury that second-degree murder includes involuntary killings that occur in the commission of an unlawful act," the Nevada Supreme Court reasoned that "the State's charging document did not allege that O'Keefe killed the victim while he was committing an unlawful act and *the evidence presented at trial did not support this theory of second-degree murder*." ECF No. 59-20 at 2-3 (emphasis added). While this final part of the Nevada Supreme Court's reasoning does explain that there was insufficient evidence to convict O'Keefe of felony murder, a theory of second-degree murder which was not charged, this statement does not amount to an acquittal. "[A]n 'acquittal' includes 'a ruing by the court that evidence is insufficient to convict, a 'factual finding [that] necessarily establish[es] the criminal defendant's lack of criminal culpability,' and any other 'rulin[g] which relate[s] to the ultimate question of guilt or innocence.'" *Evans v. Michigan*, 568 U.S. 313, 319 (2013) (alterations in original); *see also Scott*, 437 U.S. at 91 ("A judgment of acquittal[ can be] based on a jury verdict of not guilty or on a ruling by the court that the evidence is insufficient to convict."). The Nevada Supreme Court's ruling does not meet any of these definitions. In fact, the Nevada Supreme Court's reversal of O'Keefe's conviction did not touch upon the "ultimate question" of O'Keefe's "guilt or innocence." *Evans*, 568 U.S. at 319. Rather, the reversal of O'Keefe's conviction was based entirely on the erroneous jury instruction.

Therefore, because O'Keefe's third trial was not a violation of the Fifth Amendment right to be free from double jeopardy, the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence.

*See* 28 U.S.C. § 2254(d). The Court will deny O'Keefe habeas corpus relief with respect to Ground 3.

### C.     Ground 4

O'Keefe argues that his Fifth, Sixth, and Fourteenth Amendment rights to due process, a jury trial, and a fair trial were violated when the state district court denied his proposed malignant heart jury instruction. ECF No. 50 at 56-57. Specifically, it appears that O'Keefe asserts that Nevada's implied malice statute, Nev. Rev. Stat. § 200.020(2), should be interpreted for the jury and should include the following factors: "'extreme recklessness,' 'conscious disregard,' 'knowledge his conduct endangers life.'" ECF No. 116 at 51.

In O'Keefe's direct appeal following his third trial, the Nevada Supreme Court held:

> O'Keefe argues that the district court abused its discretion by rejecting his proposed instructions and by giving instructions over his objection. "The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). Because O'Keefe has not provided this court with the instructions given at trial, he fails to demonstrate that the district court abused its direction by rejecting his proposed instruction. *See generally Vallery v. State*, 118 Nev. 357, 372, 46 P.3d 66, 77 (2002) (noting that a district court does not err by refusing an accurate instruction related to the defendant's theory of the case if it is substantially covered by other instructions); *see also Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."). O'Keefe also does not identify which instructions he contends were erroneously given. We conclude that he fails to demonstrate that the district court abused its discretion.

ECF No. 76-23 at 4-5.

While settling jury instructions, O'Keefe presented the state district court with his proposed jury instruction on "abandoned and malignant heart, implied malice murder theory." ECF No. 63-27 at 154-56. O'Keefe's proposed jury instruction stated:

> The abandoned and malignant heart implied malice requires that the State prove beyond a reasonable doubt that Brian O'Keefe acted with an extreme recklessness

regarding homicidal risk. That is, he must have intended to commit acts which caused the death of Victoria Whitmarsh, he must have known that his acts were likely to cause her death, and he must have consciously disregarded the risk to her life.

ECF No. 7-2 at 29. In support of his proposed jury instruction, O'Keefe explained that "[i]t is an unintentional murder, based on an unlawful act. It has to have conscious knowledge and disregard." ECF No. 63-27 at 156. The State objected to the proposed instructing explaining that "[t]he malice aforethought instruction that we give has been approved routinely and repeatedly by the Nevada Supreme Court." *Id.* O'Keefe then rebutted:

> This is the third trial, Your Honor. They've had - - there are three types of mens rea - - of malice murder, the mens rea. They've had intentional - - intent to kill. They have had now the felony murder, mens rea. And now, this is the last one remaining.
>
> In Nevada, we all know - - you know better than me; abandoned and malignant heart is the equivalent to depraved heart murder. That is sufficient for second degree implied malice murder. It states it clearly in *Coleman v. State*. In 2000, the Nevada Supreme Court stated this. It's on page 19. I even remember it in the authority.
>
> It quite clearly states, the abandoned and malignant heart instruction must be pretty well given on an implied malice murder charge. If it was the first trial, I mean, [the State] could foresee it on simple malice aforethought. But I've already been acquitted of intentional - - the intentional stabbing, is my argument, being acquitted by the first degree intentional stabbing.
>
> And, okay, so then they return to second degree murder. Okay, was it on theory 1, or theory 2? I guess we don't know, since they got it with duplicity. Was it the simple malice murder, second degree; or was it a felony murder, second degree? Still, my argument in the Ninth Circuit is, it didn't matter whether it was simple murder or felony murder. Second degree murder is still second degree murder for double jeopardy.
>
> . . .
>
> Okay, so they took out the felony murder. Now, they're trying to just proceed back on the malice aforethought murder. Expressed malice is gone. It's in *Byford vs. Nevada*. Again, I'll use that authority; you were the judge. [The State] happened to be the prosecutor. They quite clearly state, expressed malice goes with

1  first degree murder. And you know it better than me. 994 P.2d, page 700, Your
2  Honor, 2000.

3  *Id.* at 156-57.

4  The state district court disallowed O'Keefe's proposed instruction explaining that "we

5  have an instruction in here, 'Malice may be implied when no considerable provocation appears,

6  or when all the circumstances of the killing show an abandoned and malignant heart.' That's one

7  of the instructions I'm going to give. That's a stock instruction." *Id.* at 157-58. The state district

8  court gave the following relevant instructions to the jury:

9  INSTRUCTION No. 4: Murder of the second degree is the unlawful killing
   of a human being, with malice aforethought, either express or implied. The
10  unlawful killing may be effected by any of the various means by which death may
   be occasioned.
11
   INSTRUCTION No. 5: Malice aforethought means the intentional doing of
12  a wrongful act without legal cause or excuse or what the law considers adequate
   provocation. The condition of mind described as malice aforethought may arise,
13  from anger, hatred, revenge or from particular ill will, spite or grudge toward the
   person killed. It may also arise from any unjustifiable or unlawful motive or
14  purpose to injure another, proceeding from a heart fatally bent on mischief, or with
   reckless disregard of consequence and social duty. Malice aforethought does not
15  imply deliberation or the lapse of any considerable time between the malicious
   intention to injure another and the actual execution of the intent but denotes an
16  unlawful purpose and design as opposed to accident and mischance.

17  INSTRUCTION No. 6: Express malice is that deliberate intention
   unlawfully to take away the life of a human being, which is manifested by external
18  circumstances capable of proof. Malice may be implied when no considerable
   provocation appears, or when all the circumstances of the killing show an
19  abandoned and malignant heart.

20  ECF No 63-30 at 5-7.

21  Issues relating to jury instructions are not cognizable in federal habeas corpus unless they

22  violate due process. *Estelle v. McGuire,* 502 U.S. 62, 72 (1991); *see also Gilmore v. Taylor*, 508

23  U.S. 333, 342 (1993) ("[W]e have never said that the possibility of a jury misapplying state law

19

gives rise to federal constitutional error."). The question is "'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', . . . not merely whether 'the instruction is undesirable, erroneous, or even universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)). When reviewing a jury instruction, the court inquires as to "whether the instructions as a whole are misleading or inadequate to guide the jury's deliberation." *United States v. Frega*, 179 F.3d 793, 806 n.16 (9th Cir. 1999) (internal citations omitted); *see also Estelle*, 502 U.S. at 72 (explaining that a challenged instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record" (quoting *Cupp*, 414 U.S. at 147)). Furthermore, jurors are presumed to follow the instructions that they are given. *United States v. Olano*, 507 U.S. 725, 740 (1993). Even if an instruction contains a constitutional errors, the court must then "apply the harmless-error analysis mandated by *Brecht*[ *v. Abrahamson*, 507 U.S. 619 (1993)]." *Calderon v. Coleman,* 525 U.S. 141, 146 (1998). The question is whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 145.

The heart of O'Keefe's argument focuses on the fact that a petitioner's due process rights are violated if a jury instruction "ha[s] the effect of relieving the State of the burden of proof enunciated in *Winship* on the critical question of petitioner's state of mind." *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979); *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Evanchyk v. Stewart*, 340 F.3d 933, 939 (9th Cir. 2003) ("It is a violation of due process for a jury instruction to omit an element of the crime.").

In "the crime of second degree murder . . . a specific intent to kill need not be found." *Hancock v. State*, 80 Nev. 581, 583, 397 P.2d 181, 182 (Nev. 1964). Instead, second-degree murder requires a finding of malice, express or implied. *Labastida v. State*, 115 Nev. 298, 307-08, 986 P.2d 443, 449 (1999); *see also* Nev. Rev. Stat. § 200.010(1) ("Murder is the unlawful killing of a human being . . . [w]ith malice aforethought, either express or implied; . . . The unlawful killing may be effected by any of the various means by which death may be occasioned."). "Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." Nev. Rev. Stat. § 200.020(2). Implied malice is the mental element for depraved-heart—abandoned and malignant heart—murder. *Collman v. State*, 116 Nev. 687, 712, 7 P.3d 426, 442 (Nev. 2000).

O'Keefe does not appear to take issue with Jury Instructions No. 4 or No. 6. Indeed, these instructions are direct reiterations of Nev. Rev. Stat. § 200.010(1) and Nev. Rev. Stat. § 200.020, respectively. Rather, O'Keefe's assertion is that the state district court should have used his proposed jury instruction, *see* ECF No. 7-2 at 29, instead of Jury Instruction No. 5, *see* ECF No. 63-30 at 6. However, this assertion lacks merit. The second and third sentences of Jury Instruction No. 5 have been expressly approved by the Nevada Supreme Court. *See Guy v. State*, 108 Nev. 770, 776-77, 839 P.2d 578, 582-83 (Nev. 1992) (holding that the following jury instruction was valid: "The condition of the mind described as malice aforethought may arise, not alone from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed, but may result from any unjustifiable or unlawful motive or purpose to injure another, which proceeds from a heart fatally bent on mischief or with reckless disregard of consequences and social duty"); *see also Thedford v. Sheriff, Clark County*, 86 Nev. 741, 744, 476 P.2d 25, 27 (Nev. 1970) ("Malice as applied to murder does not necessarily import ill will

toward the victim, but signifies general malignant recklessness of others' lives and safety or disregard of social duty."); *Leonard v. State*, 114 Nev. 1196, 1208, 969 P.2d 288, 296 (Nev. 1998) ("Although the[ ] phrase[ a heart fatally bent on mischief is] not common in today's general parlance, we conclude that [its] use did not deprive appellant of a fair trial."). Moreover, the entirety of Jury Instruction No. 5 has been previously upheld on habeas review by this Court. *See Archie v. Foster*, 2017 WL 3923963, at *7 (D. Nev. Sept. 7, 2017).

Finally, O'Keefe's proposed language—"acted with an extreme recklessness regarding homicidal risk," "must have known that his acts were likely to cause [the victim's] death," and "he must have consciously disregarded the risk to her life"—are not required by Nevada law. O'Keefe appears to have obtained the "conscious disregard for human life" and "one must have known his acts were dangerous to life" language from *Labastida v. State*, 112 Nev. 1502, 931 P.2d 1334 (Nev. 1996). *See* ECF No. 116 at 52. However, not only was this language only used in the dissent portion of *Labastida v. State*, 112 Nev. 1502, 931 P.2d 1334 (Nev. 1996), but also *Labastida v. State*, 112 Nev. 1502, 931 P.2d 1334 (Nev. 1996) was modified and superseded on rehearing by *Labastida v. State*, 115 Nev. 298, 986 P.2d 443 (Nev. 1999). And O'Keefe appears to have obtained the "extreme recklessness" language from Black's Law Dictionary, *Collman v. State*, 116 Nev. 687, 7 P.3d 426 (Nev. 2000), and *United States v. Crowe*, 563 F.3d 969 (9th Cir. 2009). *See* ECF No. 116 at 52-53. The Nevada Supreme Court's "extreme recklessness" language in *Collman* came from a citation to a comment in the Model Penal Code § 210.2. 116 Nev. at 713, 7 P.3d at 442. And *Crowe* did not discuss Nevada law nor second-degree murder; indeed, in *Crowe*, the defendant was convicted of involuntary manslaughter in federal court. 563 F.3d 969 (9th Cir. 2009)

Because Jury Instruction No. 5 properly instructed the jury on implied malice, it did not "reliev[e] the State of [its] burden of proof . . . on the critical question of [O'Keefe]'s state of mind." *Sandstrom*, 442 U.S. at 521. Accordingly, it cannot be concluded that Jury Instruction No. 5, which was used over O'Keefe's unsupported proposed jury instruction, "'so infected the entire trial that the resulting conviction violates due process.'" *Henderson*, 431 U.S. at 154. Therefore, the Nevada Supreme Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, and was not based on an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). The Court will deny O'Keefe habeas corpus relief with respect to Ground 4.[4]

## V.     CERTIFICATE OF APPEALABILITY

The standard for the issuance of a certificate of appealability requires a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Supreme Court has interpreted 28 U.S.C. § 2253(c) as follows:

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).

---

[4] O'Keefe requested a remand for an evidentiary hearing on this ground. ECF No. 50 at 60. However, O'Keefe also contradictorily indicated that the evidentiary hearing was "not needed." *Id.* Because this Court has already determined that Jury Instruction No. 5 properly instructed the jury on implied malice and that O'Keefe's proposed instruction was improper, neither further factual development nor any evidence that would be proffered at an evidentiary hearing would affect this Court's reasons for denying this ground. Thus, there is no good cause to grant this request.

Applying this standard, the Court finds that a certificate of appealability is unwarranted in this case. The Court will deny O'Keefe a certificate of appealability.

## VI. CONCLUSION

IT IS THEREFORE ORDERED that the Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (ECF No. 50) is DENIED.

IT IS FURTHER ORDERED that O'Keefe is denied a certificate of appealability.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Brian E. Williams for Robert LeGrand as the Respondent warden on the docket for his case.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to enter judgment accordingly.

DATED: October 17, 2019.

_____
ROBERT C. JONES
UNITED STATES DISTRICT JUDGE